Randy Miller Executive Director, Department of Revenue Tallahassee
QUESTIONS:
1. Is a mobile home owner who otherwise meets the statutory requirements for homestead exemption entitled to the exemption when fee title to the land on which the owner's mobile home residence is located is owned by a corporation from which each mobile home owner is required to purchase a share of stock of the corporation and to which each mobile home owner is required to pay rent in order to occupy his respective mobile home lot?
2. If the answer to question 1 is in the affirmative, does the property appraiser allocate to each mobile home resident a proportionate share of the total value of the entire mobile home park real property based on his proportionate share of the total authorized stock of the corporation or the total outstanding stock of the corporation?
3. Should the property appraiser include the value of the `mobile homes' in addition to the value of the land on both sides of the equation in computing the value of each `mobile home' owner's proportionate assessable interest for homestead exemption purposes?
SUMMARY:
Based upon the circumstances and authorities and statutes cited, and until legislative or judicially determined otherwise, when title to land is held by a corporation which is not organized as a corporation or as a condominum association or cooperative association for the purposes of owning, maintaining, and operating a condominium or cooperative and when such corporation requires a mobile home owner to purchase a share of the capital stock of such corporation and to pay rent for occupancy and use of a mobile home park lot or site when such stockholder is not entitled solely by reason of his ownership of such stock to occupy and use such lot or site for dwelling purposes, such mobile home owner, who might otherwise meet the statutory requirements for homestead exemption from ad valorem taxes, is not entitled to such exemption and is not included within the enumerated class or classes of persons entitled to such exemption within the terms of and for the purposes of ss. 196.031 and 196.041, F. S. However, initially it is the responsibility of the property appraisers to make the necessary factual determinations of such mixed issues of law and fact, since the Attorney General is without authority to act as an arbiter of such issues. Your initial inquiry and the supplemental information supplied establish the following factual situation. A corporation, organized under the laws of Florida, has been established to, among other things, purchase, or otherwise acquire, and to own, invest in, trade in, and deal in and with goods, wares, merchandise, real and personal property, and services of every kind or description. The corporation further is specifically `not to conduct a . . . cooperative association' among other prohibited acts.
The corporation is empowered to issue the sell 10,000 shares of stock. The supplemental information you have supplied does not indicate how many shares of stock have been sold or the sales price or consideration paid therefor, nor does it disclose the manner in which the corporation acquired or holds title to or possession of the land being assessed or whether the same is subject to any leasehold interests or mortgage liens or other like encumbrances. The information you provide does not disclose the existence of other corporate documents in the nature of a declaration of condominium, a cooperative document or cooperative articles of incorporation, or the like. Your inquiry does indicate that the persons desiring to reside in the mobile home community must meet two requirements in order to fulfill that desire. First, they must purchase a share of the capital stock of the corporation; and second, they must pay rent on the mobile home lot in order to reside thereon. Your original query and the supplemental information you have supplied indicate that there are no written leases between mobile home owners and the mobile home park owner or operator, and there does not appear to be any requirement that only residents of the mobile home development may own the capital stock of the corporation. Thus, no real nexus is established between the right of occupancy or use of the mobile home lot and the ownership of stock except that this must exist in addition to payment of rent on such lot in order to reside thereon in the mobile home park. The inquiry suggests that there exists an apparent conflict between the provisions of s. 6, Art. VII, State Const., and the implementing provisions of ss. 196.031 and196.041, F. S., bringing into question the validity or partial validity of those statutes. These laws must be presumed to be valid and must be given effect until they are judicially declared unconstitutional. See State ex rel. Atlantic Coastline Rail Co. v. State Board of Equalizers, 94 So. 681 (Fla. 1922); Evans v. Hillsborough County, 186 Co. v. State (Fla. 1938); and Pickerill v. Schott, 55 So.2d 716, 719 (Fla. 1951). It is, of course, beyond the authority of my office to pass upon the validity of these laws; such is the prerogative of the judiciary. These comments should not be taken to imply that any actual or real conflict does in fact exist or that such laws are in any way invalid or partially invalid. Cf. Ammerman v. Markham, 222 So.2d 423 (Fla. 1969), sustaining the validity of ch. 67-339, Laws of Florida, which first extended the homestead tax exemption to owners of condominium and cooperative apartments. It is against this background that your questions are answered.
Your first question is answered in the negative.
Chapter 67-339, Laws of Florida, amended ss. 192.12 and 192.13, F. S., to provide homestead tax exemption to each owner-occupied condominium parcel and on each apartment occupied by a tenant-stockholder or member of a cooperative apartment corporation. For the purposes of the instant inquiry, the essential terms of ch. 67-339 are substantially the same as the material terms of ss. 196.031(1) and (2) and 196.041, F. S. Chapter 67-339 was to
 . . . take effect on the first January 1st . . . after a revised constitution of Florida is approved by (the qualified electors) which grants a homestead exemption . . . on each owner-occupied condominium parcel and on each apartment occupied by tenant-stockholder or member in the building owned by a cooperative apartment corporation.
The Analysis of Proposed Revision by the Legislative Reference Bureau on the Draft of Proposed 1968 Constitution submitted by the Legislature to the voters for ratification at the general election of November 5, 1968, in pertinent part states: `[t]he (homestead) exemption is also extended to condominiums and cooperatives.' Section 6(a) of Art. VII of such Draft of Proposed 1968 Constitution in pertinent part provided:
 . . . The real estate may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by stock ownership or membership representing the owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years.
In Ammerman v. Markham, supra, the question before the court was whether ch. 67-339, supra, could constitutionally extend the provisions of s. 7 of Art. X, State Const. 1885, to the owners of cooperative and condominium apartments (the 1968 Revised Constitution did not take effect until 6 days after the exemption status was determined, and, therefore did not apply during the 1969 tax year). The court found that the Legislature, by enacting ch. 67-339, intended to and did include cooperative and condominium apartments within the meaning of the terms `real property' and `dwelling house' as used in s. 7 of Art. X of the 1885 Constitution, and held that ch. 67-339 constituted a valid legislative definition of `real property' and `dwelling house' as used in s. 7 of Art. X of the 1885 Constitution. In a later decision, In re Estate of Wartels, 357 So.2d 708 (Fla. 1978), on the question of whether a cooperative apartment may be considered homestead property for the purpose of subjecting it to state statutes regulating the descent of homestead property, the Wartels
court in distinguishing Ammerman observed that the Ammerman court `merely sustained the statutory implementation of s. 6 of Art.VII, Fla. Const. (1968 Revision), governing tax exemption for homesteads.' This history of the constitutional and statutory provisions pertinent to the instant inquiry seems to establish that the Legislature has placed its interpretation on the terms of s. 6 of Art. VII of the 1968 Revised Constitution and the constitutional definition of `real property' and `legal title or beneficial title in equity' thereto as used in s. 6(a), Art. VII of the 1968 Revised Constitution. The language employed in ch. 67-339, now found in ss. 196.031 and 196.041, F. S., would seem to demonstrate that the Legislature purposed the additional extension of the homestead tax exemption only to owners of condominium and cooperative apartments and no others. The other enumerated class or classes of persons in ss. 196.031 and 196.041 are, of course, if otherwise eligible, qualified for and entitled to the prescribed homestead tax exemption.
Section 196.031(1) and (2), F. S., in pertinent part provides:
 (1) Every person who has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her permanent home . . . shall be entitled to an exemption from all taxation . . . up to the assessed valuation of $5,000 on the said home and contiguous real property, as defined in s. 6, Art. VII of the State Constitution. Said title may be held by the entireties, jointly, or in common with others, and said exemption may be apportioned among such of the owners as shall reside thereon, as their respective interests shall appear, but no such exemption of more that $5,000 shall be allowed to any one person or on any one dwelling house, except that an exemption up to the assessed valuation of $5,000 may be allowed on each apartment occupied by a tenant-stockholder or member of a cooperative apartment corporation and on each condominium parcel occupied by its owner, nor shall the amount of the exemption allowed any person exceed the proportionate assessed valuation based on the interest owned by such person.
 (2) As used in subsection (1), 'cooperative apartment corporation' means a corporation, whether for profit or not for profit, organized for the purpose of owning, maintaining and operating an apartment building or apartment buildings to be occupied by its stockholders or members; and `tenant-stockholder or member' means an individual who is entitled, solely by reason of his ownership of stock or membership in a cooperative apartment corporation, to occupy for dwelling purposes an apartment in a building owned by such corporation. A corporation leasing land for a term of 98 years or more for the purpose of maintaining and operating a cooperative apartment thereon shall be deemed the owner for purposes of this exemption. (Emphasis supplied.)
In pertinent part, s. 196.041, F. S., provides:
 . . . and lessees owning the leasehold interest in a bona fide lease having an original term of 98 years or more in a condominium parcel as defined in chapter 718, or persons holding leases of 50 years or more, existing prior to June 19, 1973, for the purpose of homestead exemptions from ad valorem taxes and no other purpose, shall be deemed to have legal or beneficial and equitable title to said property. In addition, a tenant-stockholder or a member of a cooperative apartment corporation who is entitled solely by reason of his ownership of stock or membership in *3927 the corporation to occupy for dwelling purposes an apartment in a building owned by the corporation, for the purpose of homestead exemption
from ad valorem taxes and for no other purpose, is deemed to have beneficial title in equity to said apartment and a proportionate share of the land on which the building is situated. . . . (Emphasis supplied.)
The above factual statement applied to the material provisions of ss. 196.031(1) and (2) and 196.041 would seem to clearly establish that the mobile home owner in question does not fall within the terms of these statutes. However, initially it is the property appraiser's responsibility to make such factual determinations or determinations on mixed questions of law and fact. This office possesses no fact-finding authority and is without authority to serve as an arbiter of such mixed issues of law and fact. Nevertheless, and for the sole purpose of offering guidance in the determination of this particular issue and novel question on which there does not appear to be any direct judicial expression by the Florida appellate courts, I would make the following observations founded upon the prefatory factual statement herein.
There apparently being no documents in the nature of a declaration of condominium (which may be created only pursuant to ch. 718, F. S.), the mobile home real estate here involved would not meet the statutory requirements for `condominium property' (see s.718.103(11)), `condominium parcel' (ss. 196.031(1), 196.041, and718.103(10)), or part or parcel of a `condominium' (s. 718.103(9),see also s. 718.104). A condominium is a special statutorily created form of ownership or real property and a condominium unit owner owns and holds title to real property (see, e.g., ss.718.102 and 718.103(9), (10), (11), (16), and (17)). A share of stock in the subject corporation is not, and its owner does not hold, title to real property. Cf. In re the Estate of Wartels,357 So.2d 708, 709 (Fla. 1978). It would seem obvious that the owner of a condominium parcel (although he or she pays certain assessments for the common expenses (see ss. 718.103(7) and718.115)), does not pay rent to occupy and use his or her dwelling unit or the real property upon which such owner's dwelling unit is located.
The articles of incorporation of the subject corporation expressly prohibit the `conduct [of] a . . . cooperative association . . . .' These articles do not anywise provide that subject corporation is `a cooperative apartment corporation' (see ss. 196.031(1) and196.041, F. S.,), organized `for the purpose of owning, maintaining and operating an apartment building . . . to be occupied by its stockholders' for dwelling purposes (see ss.196.031(1) and (2), 196.041, 719.102, and 719.103(2), (8), (9), (10), (11), (14), (15), and (16), F. S.). A unit owner of a part of the cooperative property (see s. 719.103(11) and (14)), does not receive title to the cooperative unit but only receives shares in the cooperative or association (see s. 719.103(2)) which holds title to the land or leasehold on which the cooperative apartment building is constructed; and, in conjunction with the purchase of such shares, the stockholder receives a lease for his individual cooperative unit. See In re the Estate of Wartels, supra, at 709,but see Ammerman v. Markham, supra, which holds that the Legislature, for the purpose of taxation, intended to include cooperatives and condominiums within the meaning of the terms `real property' and `dwelling house' and that ch. 67-339, Laws of Florida, was a valid legislative definition of those terms as sued in the Constitution of 1885, so as to extend homestead tax exemption benefits to owners of condominium and cooperative apartments beginning January 1, 1969. As stated by the court in Inre the Estate of Wartels, at 710, the Ammerman court sustained the statutory implementation of s. 6, Art. VII, 1968 Revised Constitution, governing tax exemption for homesteads. The above prefatory factual statement indicates that subject corporation is not a cooperative association (s. 719.103(2)) or corporation or owner of cooperative property (see s. 719.103(2), (8), and (9)). A cooperative unit owner is defined by s. 719.103(15) to mean the person holding a lease or other muniment of title or possession of a unit (s. 719.103(11) and (14)), that is granted by the association (s. 719.103(2)), as the owner of cooperative property (s. 719.103(11)). The factual statement indicates that there are no written leases between the mobile home owners in question and any cooperative association or corporation or even the mobile home park owner or operator. Moreover, the facts submitted for consideration utterly fail to establish that the stock of the subject corporation entitles its shareholders to occupy and use `rented' mobile home lots (or the mobile home park) for dwelling purposes solely by reason of the ownership of such stock.
Under the facts delineated above, subject mobile home owners do not fall within any of the other enumerated classes of persons who hold `the legal title or beneficial title in equity to real property' or who are in `possession of real estate' and who are otherwise entitled to homestead exemption from ad valorem taxes within the purview of and for the purposes of ss. 196.031 and196.041, F. S. Therefore, it appears that the mobile home owner in question may not be brought within any of the enumerated classes of persons entitled to the prescribed homestead exemption from ad valorem taxes within the terms of and for the purposes of ss.196.031 and 196.041. As noted above, the statutes are presumptively valid and must be given effect and followed by the affected county and state officials.
It is a fundamental rule of statutory construction that when a statute enumerates things upon which it is to operate, or sets forth exceptions to its operative force, it must be construed as impliedly excluding from its operation all things or exceptions not expressly mentioned or set forth therein. See Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944); Aaron Williams v. American Surety Co. of New York, et al., 99 So.2d 877
(2 D.C.A. Fla., 1958); Interlachen Lakes Estates, Inc. v. Snyder,304 So.2d 433 (Fla. 1973); and Thayer v. State, 335 So.2d 815
(Fla. 1976). Moreover, a legislative direction how a thing shall be done is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944), and State exrel. Reno v. Barquet, 358 So.2d 230 (3 D.C.A. Fla., 1978).
Your inquiry draws my attention to AGO 075-159, but that opinion is inapposite to the factual circumstances peculiar to the instant inquiry. Moreover, the facts attending that request indicated that the shares of stock of the corporation there involved entitled the stockholders of that corporation by reason of the purchase thereof to occupy mobile home sites on the land owned by the corporation, and no rents were required or paid to the owner or operator of the mobile home park for the occupancy and use of the mobile home lots or sites for dwelling purposes.
Your first question having been answered in the negative, your second and third questions are therefore rendered moot and need not be considered here.
Prepared by: William D. Townsend, Assistant Attorney General